UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JULIO RODRIGUEZ<br><br>Petitioner,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Respondent. | Case No.: 13-CR-4514-JO-4<br><br>**ORDER DENYING PETITIONER'S MOTION TO REDUCE SENTENCE PURSUANT TO 28 U.S.C. § 2255** |

Petitioner Julio Rodriguez ("Petitioner") moves to reduce his sentence pursuant to 28 U.S.C. § 2255 on the grounds that he received ineffective assistance of counsel during his trial, sentencing, and appeal. Dkt. 760 ("§ 2255 Motion"). He also filed motions for discovery and to appoint counsel. *Id.* at 22. For the reasons below, the Court DENIES Petitioner's motions.

///

///

1

Crim case: 13-CR-4514-JO-4

# I. BACKGROUND

Petitioner seeks to reduce the sentence that the Court gave him for conspiring to smuggle drugs into various California state prisons on behalf of the Mexican Mafia. On December 19, 2013, the government charged Petitioner, an associate of the Mexican Mafia (a prison gang notorious for drug trafficking in federal and state prisons), with conspiring to (1) commit racketeering and (2) distribute controlled substances. Dkt. 394, Pre-Sentence Report ("PSR") at 1, 5. As to the second count, Petitioner was charged with conspiracy to distribute at least 100 grams of heroin and at least 50 grams of methamphetamine. *Id.* at 1.

In the lead-up to his trial, Petitioner's counsel allegedly failed to advise him that he had the option of entering an "open plea" (i.e., pleading guilty without entering a formal plea agreement) and withheld information from him that he needed to meaningfully evaluate this choice. Specifically, he alleges that his counsel failed to advise him of (1) the extent of the evidence against him; (2) the likelihood of a three-point reduction in his base offense level for acceptance of responsibility if he pled guilty; and (3) his option to raise certain defenses at sentencing even if he pled guilty. § 2255 Motion at 13–14.

During Petitioner's trial, his attorney argued that Petitioner was a heroin addict whose involvement in the case stemmed from his own drug addiction. His opening statement largely focused on this theme as illustrated by these examples:

- "The evidence is going to demonstrate . . . that at all times relevant to this case, [Petitioner] was minding his own business in prison and using large quantities of heroin."
- "The fact of the matter is most of [the heroin] was for him."
- "You are going to hear from officers from the California Department of Corrections, who found syringes in [Petitioner's] cell, who disciplined him for having hypodermic syringes made out of a ballpoint pen. So, he is using drugs in prison."

Trial Transcript, Day 1 at 73–80.  Defense counsel also introduced trial testimony from Petitioner's wife as well as corrections officers regarding the severity of Petitioner's addiction.  *See* Dkt. 423 ("Trial Witness List").  At the close of evidence, Petitioner's counsel declined to pursue a jury instruction which stated that drugs trafficked for personal use could not be considered for determining the drug quantity in a conspiracy case.  Dkt. 344, Proposed Jury Instructions.

At the conclusion of trial, the jury convicted Petitioner on both counts: conspiracy to engage in racketeering and conspiracy to distribute controlled substances.  Dkt. 364, Jury Verdict.  As to the controlled substances count, however, the jury convicted Petitioner on the heroin charge only and acquitted him on the methamphetamine charge.  *Id.*

Petitioner's sentencing took place on March 21, 2016.  Dkt. 646, Sentencing Transcript.  During this hearing, counsel argued that Petitioner's drug addiction warranted a more lenient sentence, asserting "the offense conduct here was undeniably fueled by [Petitioner's] heroin addiction" and "[the heroin] was for [Petitioner's] personal use."  *Id.* at 10–11.  In calculating the sentencing guidelines, the Court applied a base offense level of 24 based on the drug amounts implicated in the heroin conviction.  *Id.*; U.S.S.G. § 2D1.1(c)(8).  Had Petitioner entered into an open plea for all charges, his guideline calculations would have started at a base offense level of 30 to account for the methamphetamine charge in addition to the heroin charge.  *See* PSR at 23.  Because Petitioner was only convicted of the heroin charge at trial, his base offense level at sentencing was calculated at 24.  His adjusted offense level was 28 as a result of two upward adjustments: plus two offense points for the specific offense of smuggling drugs within a prison, and plus two for his aggravated role in the offense.  Sentencing Transcript at 10–11.  Petitioner did not receive a downward adjustment to his offense level for acceptance of responsibility.  *Id.* at 23–24.  With no applicable sentencing

departures, Judge Benitez[1] calculated the offense level as 28 and the guideline range as 140 to 175 months in custody. *Id.* at 23. Judge Benitez ultimately sentenced Petitioner to 175 months. Dkt. 542, Judgment.

On appeal, counsel again emphasized the role that Petitioner's drug use played in his involvement with the Mexican Mafia's drug distribution activities. For example, he argued that "[Petitioner's] addiction was so debilitating, in fact, that his wife would sometimes help him inject the drug into his muscles because he no longer had any usable veins" and "[t]here simply was no dispute that a significant quantity of the heroin smuggled into prison by [Petitioner's] wife was for [Petitioner's] personal use." Appellate Dkt. 13 at 8; Appellate Dkt. 86 at 7.

Petitioner filed this § 2255 motion on August 28, 2023, asking the Court to vacate or reduce his sentence because his counsel was ineffective in the following ways. Dkt. 760. First, Petitioner contends that his attorney failed to argue that Petitioner's drug addiction warranted an acquittal or lower sentence at all stages of the process and also failed to pursue a "personal use" jury instruction during trial. *Id.* at 18. Second, Petitioner contends that his attorney failed to properly advise him regarding his option to enter an open plea and the benefits of doing so. *Id.* at 12. He also filed a motion for discovery and a motion to appoint counsel. *Id.* at 22.

## II. DISCUSSION

The Court will address each of Petitioner's above arguments in turn. First, it will consider whether Petitioner established that his counsel was objectively unreasonable in failing to argue that Petitioner's addiction warranted an acquittal or a lighter sentence and in declining to pursue a "personal use" jury instruction. Second, the Court will examine whether Petitioner suffered prejudice as a result of his attorney's failure to advise him about entering an open plea.

---

[1] Judge Benitez presided over Petitioner's trial and sentencing. *See* Dkts. 552, 646. The case was transferred to the undersigned on August 15, 2023. Dkt. 757.

A prisoner may collaterally attack a sentence on grounds of ineffective assistance of counsel. *United States v. Span*, 75 F.3d 1383, 1387 (9th Cir. 1996). To prevail on an ineffective assistance of counsel claim, the petitioner must show that counsel's performance was constitutionally deficient and that, as a result, the petitioner suffered prejudice. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Because both poor performance and prejudice are required elements, failure to show one or both prongs is fatal to an ineffective assistance of counsel claim. *Id.* at 697. Thus, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, that course should be followed." *Id.* at 670.

To constitute constitutionally deficient representation, a lawyer's representation must be objectively unreasonable. *Id.* at 697–98. There is a "strong presumption that counsel's conduct falls within the wide range of acceptable professional assistance." *Id.* at 689. Thus, counsel is objectively unreasonable only when their conduct was so poor that it made the trial a "mockery or farce." *Dodd v. United States*, 321 F.2d 240, 243 (9th Cir. 1963); *see also Washington v. United States*, 297 F.2d 342, 344 (9th Cir. 1961) (stating that ineffective assistance of counsel requires conduct which is "shocking to the conscience of the court"). A petitioner's mere disagreement with counsel over trial strategy is insufficient to show that counsel was constitutionally ineffective. *Strickland*, 466 U.S. at 690 ("[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable."); *Smith v. Stewart*, 77 F. App'x 925, 926 (9th Cir. 2003) (holding that counsel's decision of which jury instructions to pursue is a strategic decision entitled to deference); *Chilinski v. Montana*, No. CV 18-41-H-BMM-JTJ, 2019 WL 5865300, at *6 (D. Mont. Aug. 6, 2019) (noting that determinations such as which arguments to present at trial are within counsel's discretion). Counsel is not ineffective in refusing to raise meritless arguments or in declining to pursue every conceivable non-frivolous claim. *See Strickland*, 466 U.S. at 687–88.

A petitioner must also show that they were prejudiced by their counsel's objectively unreasonable performance. To demonstrate prejudice as a result of counsel's failure to advise during the plea process, a petitioner must demonstrate a reasonable probability that, but for counsel's shortcomings, (1) they would have pled guilty; (2) the plea would have been entered without cancellation by the prosecution or the trial court refusing to accept it; and (3) the plea would have resulted in a more favorable outcome by reason of a plea to a lesser charge or a sentence of less prison time. *Missouri v. Frye*, 566 U.S. 134, 147 (2012).

**A. Counsel's Failure to Argue that Petitioner Suffered from Substance Abuse Issues**

Petitioner argues that his counsel was constitutionally deficient because he failed to argue during trial, sentencing, and on appeal that Petitioner's drug addiction warranted a lower sentence. He also alleges that his counsel failed him by declining to pursue a "personal use" jury instruction, i.e., an instruction to the jury that they cannot consider any drugs consumed by Petitioner for purposes of determining guilt for the conspiracy.

First, contrary to Petitioner's allegations, counsel extensively argued that Petitioner's drug addiction warranted an acquittal or lessened his culpability in this case. While Petitioner claims that his counsel "unprofessionally failed to present evidence and argument that the court should not and could not use heroin quantities which [Petitioner] obtained for personal use," § 2255 Motion at 19, the record belies this assertion. In fact, at all stages of this case, counsel argued that Petitioner's drug addiction justified a "not guilty" verdict or a reduction in his sentence. *See* Trial Transcript, Day 1 at 73–80; Sentencing Transcript at 10–11; Appellate Dkts. 13 at 8, 86 at 7. Although Petitioner may have preferred that his counsel argue this point differently or more forcefully, decisions such as these—determining which arguments to pursue and how vigorously to pursue them—are strategic in nature and entitled to significant deference. *See Strickland*, 466 U.S. at 690 ("[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable."). Contrary to Petitioner's arguments, his counsel did in fact advance arguments regarding Petitioner's addiction at

trial, sentencing, and during appeal. Because any decisions not to further advance these points would have been strategic calls that fall within the wide range of acceptable lawyering, *see Chilinski*, 2019 WL 5865300, at *6, the Court finds that counsel's performance was not objectively unreasonable on this basis.

Counsel was also not objectively unreasonable in declining to pursue a "personal use" jury instruction stating that the quantity of drugs personally consumed by Petitioner, but obtained through his role in a conspiracy, could not be used in determining his guilt for participating in the underlying conspiracy. The instruction Petitioner advances is not an accurate statement of the law surrounding conspiracy to distribute controlled substances.[2] The offense of conspiracy to distribute controlled substances has only two elements: first, there must be an agreement between two or more people to distribute a controlled substance, and second, the defendant must have joined in the agreement knowing and intending to help accomplish its purpose. Ninth Circuit Model Crim. Instruction 12.5; *see United States v. Collazo*, 984 F.3d 1308, 1319 (9th Cir. 2021). Petitioner cannot avoid liability for agreeing to help distribute drugs within prisons merely because he consumed some of the drugs himself, as the identity of the end user has no bearing on the elements of conspiracy. *See id.* There is also no model jury instruction that reflects Petitioner's interpretation of the law. Because there was no legal basis for such an instruction and because counsel retains significant discretion over strategic decisions like which jury instructions to pursue, Petitioner's counsel was not objectively unreasonable in declining to pursue this course of action. *See Strickland*, 466 U.S. at 687–88; *Smith*, 77 F. App'x at 926 (holding that decisions such as which jury instructions to pursue are largely up to counsel's discretion).

---

[2] Petitioner's citation to *United States v. Gonzales*, 307 F.3d 906 (9th Cir. 2002) is inapposite. The *Gonzales* court held that, in the context of a charge for possession with intent to distribute to *other people* (i.e., sell), a defendant's personal drug use may be relevant to the extent that some of the drugs were not for distribution. *Id.* at 912. Here, in contrast, Petitioner's crime was conspiring to distribute controlled substances within a prison to people including himself. *See* PSR at 1.

7

Because Petitioner has failed to establish that he received objectively unreasonable representation related to his personal use of drugs, his ineffective assistance of counsel claim on these grounds fails. The Court declines to consider whether Petitioner was prejudiced by these alleged failures. *See Strickland*, 466 U.S. at 670.

**B. Failure to Advise Regarding Open Pleas**

Petitioner also argues that his counsel was constitutionally defective in failing to advise him to plead guilty. Specifically, Petitioner contends that counsel failed to advise him that he could enter an open plea without cooperating with the government. § 2255 Motion at 12–18. If he had known about this option and received advice that (1) there was a substantial amount of evidence against him; (2) he could receive a three-point adjustment for acceptance of responsibility; and (3) he could still raise certain defenses at sentencing, he asserts he would have pled guilty. *Id.* Because Petitioner was ultimately not prejudiced by this lack of advice during the plea process, the Court concludes that his ineffective assistance claim on this ground fails.

Here, Petitioner suffered no prejudice because he ultimately fared better with a post-trial sentencing than he would have with an open plea. The government gave Petitioner no plea offer that he was willing to accept, so the only plea he could have entered was an open plea.[3] Entering into an open plea would have required Petitioner to plead guilty to all aspects of the indictment, including both the heroin and methamphetamine charges in the second count. Because he was acquitted of the methamphetamine charges at trial and only sentenced on the heroin charges, a pre-trial open plea based on the heroin and methamphetamine charges would have led to a *higher* base offense level and final sentencing guideline range than he actually received after

---

[3] It appears from the record that the only plea offer Petitioner received was conditioned on his cooperation with the government. *See* Dkts. 760, 776. Petitioner does not argue that he would have accepted the offered agreement with effective representation or that he was entitled to receive a plea offer to his particular liking. *See Weatherford v. Bursey*, 429 U.S. 545, 561 (1977).

trial. With an open plea, his base offense level would have been 30 (due to the charged quantities of heroin and methamphetamine) instead of the 24 he received post-trial (for heroin only). *See* PSR at 23. With a starting point of 30, after a total of six points in upward adjustments as well as a three-point downward adjustment for acceptance of responsibility, his final offense level in the open plea scenario would have been 33. *See generally* PSR; U.S.S.G. § 2D1.1(c)(5). In Petitioner's actual post-trial sentencing, his base offense level was 24 and, after four points in upward adjustments and no downward adjustment for acceptance of responsibility, his final offense level was 28.[4] In other words, Petitioner fared better with his post-trial sentencing than he would have with an open plea sentencing even with the three-point downward adjustment for acceptance of responsibility which he may have received in the open plea scenario. *See* U.S.S.G. § 2D1.1(c)(5); U.S.S.G. § 2D1.1(b)(5); PSR at 10–11.

Because he ultimately received a lower guideline range than if he had entered an open plea, Petitioner cannot establish that he was prejudiced by his counsel's failure to advise him to take this route. *See Frye*, 566 U.S. at 147; *see also Cuellar-Chavez*, 2013 WL 425886, at *11. Thus, Petitioner's claim for ineffective assistance of counsel fails on this ground. The Court declines to consider whether this conduct was objectively unreasonable as it caused no prejudice. *See Strickland*, 466 U.S. at 670.

### III. PETITIONER'S ADDITIONAL REQUESTS

Petitioner also requests leave to conduct discovery regarding his claims. Dkt. 760 at 22. For the same reasons discussed above, even if Petitioner could develop further factual support with the assistance of discovery, the Courts finds that the nature of the allegations themselves demonstrate that he would not be able to establish that he suffered

---

[4] Both his actual post-trial sentencing and the hypothetical open plea calculations account for two two-point upward adjustments applied by the Court for (1) the specific offense of smuggling drugs within a prison and (2) his aggravated role in the offense. Sentencing Transcript at 10–11. Both of these adjustments would have applied even if Petitioner entered an open plea. *See* PSR at 9. Additionally, had he entered an open plea, he would have received an additional two-point upward adjustment for trafficking methamphetamine. *See* USSG § 2D1.1(b)(5).

prejudice from a lack of plea advice or that his attorney was objectively unreasonable in advancing his "personal drug use" defense. *See United States v. Suris*, 625 F. Supp. 3d 1040, 1051 (C.D. Cal. 2022) (declining to grant § 2255 discovery where "further development of the record would be futile because the record conclusively demonstrates [the Petitioner's] claims lack merit"); *Bracy v. Gramley*, 520 U.S. 899, 908–09 (1997). The Court thus DENIES his request for discovery.

Finally, the Court DENIES Petitioner's motion to appoint counsel, Dkt. 760 at 22, because he has not established that "extraordinary circumstances" warrant such an appointment. *See Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987) (holding that there is generally no right to counsel in § 2255 proceedings); *Wilborn v. Escalderon*, 789 F.2d 1328, 1331 (9th Cir. 1986) (stating that when there is no right to counsel, an attorney will only be appointed in extraordinary circumstances). For the above reasons, the Court does not find that Petitioner is likely to succeed on his § 2255 petition. *Wilborn*, 789 F.2d at 1331. Moreover, in his petition and his reply brief, Petitioner has shown that he can successfully outline the legal bases for his claims as well as the facts relevant to these claims. *See generally* § 2255 Motion; Dkt. 784 ("Reply Brief"); *Wilborn*, 789 F.2d at 1331 ("A finding of exceptional circumstances requires an evaluation of . . . the ability of the petitioner to articulate his claims *pro se* in light of the complexity of the legal issues involved."). Because he can establish neither a likelihood of success nor an inability to articulate his claims, the Court concludes that appointment of counsel is not warranted.

## IV. CONCLUSION

For the above reasons, the Court DENIES Petitioner Julio Rodriguez's motion to vacate or reduce his sentence. Dkt. 760. The Court also DENIES his requests for discovery and his motion to appoint counsel. *Id.* Additionally, the Court DECLINES to certify this case for appeal because Petitioner has not made a substantial showing that he was denied a constitutional right. 28 U.S.C. § 2253(c)(2); *see Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (stating that a § 2255 certificate of appealability may only be issued where

"reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong").

**IT IS SO ORDERED**.

Dated: July 10, 2024

Honorable Jinsook Ohta
United States District Judge